32 F.3d 570
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Burns ALEXANDER, McKinley "Jake" Alexander and Cornelius
Thurmond, Defendants-Appellants.
 Nos. 93-1336 to 93-1339.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 11, 1994.
Decided June 13, 1994.
 
 Before CUMMINGS, CUDAHY and MANION, Circuit Judges.
 
 ORDER
 
 1
 This is an appeal from drug conspiracy convictions. The defendants contest the sufficiency of the evidence to prove their participation in the conspiracy and contend that one defendant did not receive effective assistance of counsel. For the reasons stated below, we affirm.[1]
 
 
 2
 Burns Alexander, McKinley ("Jake") Alexander and Cornelius Thurmond were found guilty of conspiring to possess with intent to distribute marijuana and of distributing marijuana in violation of 21 U.S.C. Secs. 841(a)(1), 846. Burns was also found guilty of using proceeds from an illegal drug transaction to conduct a financial transaction in violation of 18 U.S.C. Sec. 1957. Following his conviction, and after substituting new counsel for his trial counsel, Burns filed an amended motion for a new trial, which the other two appellants joined. The motion alleged, inter alia, ineffective assistance by Burns' trial counsel. The district court found the motion untimely and denied it for lack of jurisdiction. The appellants were sentenced to various terms of imprisonment, followed by required periods of supervised release.
 
 
 3
 The alleged drug conspiracy involved transporting marijuana from Mexico (Rio Grande Valley) to Illinois in semi-trailers. Burns and his brother, Jake, each had a trucking company. A third man, Rodriguez, contacted Burns in his effort to find drivers to haul marijuana for an existing drug distribution scheme. (Rodriguez had met Burns on an earlier visit to Illinois.) After obtaining the first load of marijuana from Rodriguez, Burns and Jake hauled it to Illinois, concealing the marijuana among produce. Rodriguez then paid Burns for hauling the load with cash in a paper sack. Much the same procedure was used for four subsequent loads, each of which involved the property, employees or relatives of Burns or Jake.[2] On the sixth load, Thurmond, Jake's son and a driver Jake hired were caught and arrested in Texas. The truck they were using was traceable to both Burns and Jake. A drug enforcement agent contacted Burns, who attempted to deny involvement in the conspiracy. But Burns' stories did not hang together. Moreover, a government informant was able to incriminate Burns by secretly recording his admissions that he actually directed several of his alleged co-conspirators' activities. Further, Burns was found to have paid off the balance of his mortgage in cash and checks, notwithstanding the fact that his business and tax records revealed no legitimate source for this money.
 
 
 4
 In addition to Burns' ineffective assistance claim, the appellants argue that the evidence of conspiracy was insufficient. They contend that they were denied a fair trial because the indictment alleged a single, overall conspiracy while the evidence proved multiple, separate conspiracies.
 
 
 5
 We review a sufficiency of evidence challenge to determine whether any rational trier of fact could have concluded that the defendant was guilty of the crime charged beyond a reasonable doubt. United States v. Durrive, 902 F.2d 1221, 1225 (7th Cir.1990). This standard is highly deferential and we will reverse only if there is no substantial evidence (including circumstantial evidence) from which a jury could find the defendant guilty. Id. We have defined a conspiracy as a "combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act." United States v. Whaley, 830 F.2d 1469, 1473 (7th Cir.1987), cert. denied, 486 U.S. 1009 (1988) (citations omitted). The government need only prove the existence of a conspiracy and the defendant's participation in it. United States v. Missick, 875 F.2d 1294, 1297 (7th Cir.1989); see also United States v. Herrero, 893 F.2d 1512, 1534 (7th Cir.), cert. denied, 496 U.S. 927 (1990) (sufficient to prove that conspiracy defendant knew its essential nature and intended to associate with its purpose). Mere presence, association or knowledge does not make one a co-conspirator. United States v. Garcia, 562 F.2d 411, 414 (7th Cir.1977); United States v. Falcone, 311 U.S. 205, 208-11 (1940).
 
 
 6
 The record reveals ample evidence from which a rational jury could have found Jake guilty beyond a reasonable doubt of the crimes charged. He made several trips to Texas and was present at meetings where other parties arranged to receive large amounts of drugs in Texas and to transport them to Illinois. Tr. II 16-18; Tr. III 211. There is evidence that he himself arranged to have drugs transported. Tr. III 205, 211. His trucking equipment was involved in transporting some of the drugs, as was his son. Tr. II 16-18; Tr. III 115, 203-05; G. Ex. 9, 10. And the other individuals alleged to be co-conspirators considered and represented him to be an active participant in drug transactions. Tr. II 16-18; Tr. III 125, 205. On these facts, Jake's involvement thus went beyond mere presence, knowledge or association; one could readily conclude that he actively invested his time and assets to help Burns, Rodriguez and others obtain and transport several large loads of marijuana from Texas to Illinois.
 
 
 7
 The evidence was also sufficient to find Thurmond guilty of the crimes charged. Thurmond, Jake's son, and the driver Jake hired drove a semi-trailer to Texas to transport "produce" back to Illinois. Thurmond was arrested with the other two when the truck, carrying a large quantity of marijuana, was stopped in Texas. Tr. III 117-22.[3] Eight months later, Thurmond agreed to be a passenger on another trip to Texas to haul produce for Jake. On that trip, Thurmond rode with Burns' employee in one of Burns' trucks. Tr. III 200-204; G. Ex. 16, 17. Thurmond knowingly helped load marijuana on the truck. Tr. III 211; Tr. IV 36-37. He agreed to drive the truck when Burns' employee, having seen the marijuana, declined. Tr. III 216-18. On these facts--particularly Thurmond's decision to drive the load of marijuana after being arrested--a jury could reasonably find that Thurmond's involvement went beyond mere presence, association or knowledge. Rather, a jury could find that he knowingly decided to help transport marijuana on separate occasions using a similar arrangement and involving similar people. Consequently, even if Thurmond was not aware of every other participant or his actions, it was reasonable for the jury to conclude that Thurmond knew or should have known the nature and extent of the marijuana transporting business in which he agreed to participate.
 
 
 8
 Finally, the evidence was sufficient to find a single conspiracy, as charged. The defendants assert that the government's proof established only two separate conspiracies, one involving Jake and his trucking operation, the other involving Burns and his trucking operation. They argue, based on this purported variance between the indictment and the proof, that the district court committed reversible error.
 
 
 9
 The Supreme Court has held that where convicted defendants have been charged with one conspiracy and the evidence proves, at best, multiple conspiracies, these convictions must be overturned. Kotteakos v. United States, 328 U.S. 750, 774 (1946); see also Fed.R.Crim.P. 52(a); United States v. Varelli, 407 F.2d 735, 744 (7th Cir.1969). However, "even if the evidence arguably established multiple conspiracies, there is no material variance from an indictment charging a single conspiracy if a reasonable trier of fact could have found beyond a reasonable doubt the existence of the single conspiracy charged in the indictment." United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991). Moreover, we presume that the jury followed any limiting instructions directing them to consider the evidence against each conspiracy defendant individually. United States v. Cochran, 955 F.2d 1116, 1120-1121 (7th Cir.1992).
 
 
 10
 As indicated, the evidence shows a continuing relationship between Burns and Jake and their trucking operations, as well as a consistent method of transporting the marijuana. It was reasonable, then, for the jury to find the defendants guilty of a single conspiracy. Further, the district court provided limiting instructions to guide the jury where evidence pertained to fewer than all defendants. Thus, we find that the defendants were not prejudiced by the single conspiracy charge.
 
 
 11
 We decline to reach the defendants' remaining claim that Burns' trial counsel was constitutionally ineffective. A defendant seeking to challenge the effectiveness of his counsel has three options: he can raise the issue in a new trial motion, on direct appeal or in a habeas petition. United States v. Taglia, 922 F.2d 413, 417 (7th Cir.1991); 28 U.S.C. Sec. 2255. But this court will dismiss a claim of ineffective assistance where the record is incomplete, particularly where trial counsel has not had an opportunity to explain his actions or fully disclose his version of events. United States v. Wagner, 996 F.2d 906, 916-17 (7th Cir.1993); United States v. D'Iguillont, 979 F.2d 612, 614-15 (7th Cir.1992), cert. denied, 113 S.Ct. 1873 (1993). Here, the only record support for Burns' claim is found in his new trial motion, dismissed as untimely by the district court, and in his statements in allocution. There was no hearing on the new trial motion and trial counsel had no opportunity to cross-examine or otherwise challenge Burns' statements in allocution. Thus, we dismiss Burns' ineffective assistance claim without prejudice, leaving him the opportunity to raise the claim again on collateral review. See Taglia, 922 F.2d 418-19.
 
 
 12
 The judgment of the district court is therefore AFFIRMED.
 
 
 
 [1]
 The transcripts of the proceedings below are in eight volumes. References to the transcripts are as follows:
 "Tr. II __" = volume dated August 25, 1992
 "Tr. III __" = volume dated August 26, 1992
 "Tr. IV __" = volume dated August 27, 1992
 "Tr. VI __" = volume dated September 1, 1992
 
 
 [1]
 References to government exhibits are denominated "G. Ex. __."
 
 
 [2]
 For example, Jake himself testified that he flew to Texas in July of 1989 to buy a load of watermelons without making prior arrangements for a truck or driver to haul the load back to Illinois. Jake contends that he obtained a truck and driver by going to a truck stop and asking over the intercom if there were any drivers from Peoria or from his own trucking business. He claims that an employee of Burns happened to be at the truck stop at that time and agreed to drive the truck. Tr. VI 88-92
 
 
 [3]
 Further, Burns stated, in one of the taped conversations, that he paid several thousand dollars in fines as a result of these arrests. G. Ex. 4A-G. Ex. 19